IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Prissy Todd, ) | Civil Action No. 2:15-0708-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND** |
| South State Bank, f/k/a South Carolina ) | |
| Bank and Trust, f/k/a First Federal Bank ) | **REPORT AND RECOMMENDATION** |
| and South State Corporation, f/k/as ) | |
| SCBT Financial Corporation, f/k/a ) | |
| First Financial Holdings, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff asserting claims under the Americans with Disabilities Act (ADA), as well as state law claims for slander <u>per se</u>, breach of contract, and breach of contract accompanied by a fraudulent act. The Defendant filed Rule 12 motion to dismiss Plaintiff's state law causes of action on March 19, 2015.

After receiving several extensions of time to respond, Plaintiff filed a response in opposition to the Defendant's motion as well as an accompanying motion to amend/correct her Complaint on May 7, 2015. Defendant thereafter filed a reply brief on May 18, 2015, as well as a memorandum in opposition to the Plaintiff's motion to amend on May 26, 2015.

These motions are now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)



1

**Order Ruling on Motion to Amend Complaint**

In her motion to amend, Plaintiff seeks to name the one individual employed by the Defendant company "currently known to Plaintiff" who made the allegedly slanderous remarks, as well as the one person "currently known to Plaintiff" who heard the slanderous remarks. Plaintiff also seeks to correct the name of the corporate Defendant.

Motions to amend should be freely given. Rule 15(a), Fed.R.Civ.P. Massey v. Branham, No. 14-1876, 2015 WL 1311598 at * 2 (D.S.C. Mar. 23, 2015). Further, Plaintiff filed her motion to amend within the deadline set in the initial Scheduling Order for filing such motions, and her motion is for the purported purpose of correcting some of alleged deficiencies cited by the Defendant in its motion to dismiss. For its part, the Defendant does not object to the re-designation of the corporate Defendant, but otherwise argues in its reply memorandum that Plaintiff's state law claims remain subject to dismissal under Rule 12, even as amended. Plaintiff disputes this contention.

Based on the foregoing, **IT IS ORDERED** that Plaintiff's motion to amend is **granted**. The Clerk is directed to filed the amended Complaint attached to Plaintiff's motion (Court Docket No. 18-2) on the docket as the Complaint in this case, and the undersigned has proceeded to address hereinbelow the Defendant's motion to dismiss as applied to the amended Complaint.

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The undersigned has ruled herein on Plaintiff's motion to amend. With respect to the Defendant's motion to dismiss, as this is a dispositive motion, a Report and Recommendation is being entered on that motion for review by the Court.



**Report and Recommendation on Motion to Dismiss**

With respect to her state law claims, Plaintiff alleges in her amended Complaint that she was first hired by the Defendant (at that time "First Federal") in or around March 2001 to work as a part-time teller. Plaintiff subsequently accepted a position as human resource associate in March 2004, following which in 2005 she was transferred to the accounting department and given the title of Payroll Account Assistant III. Plaintiff alleges that her duties in this position were to process payroll for over 980 employees. See Amended Complaint, ¶¶ 11-13. Plaintiff alleges that beginning in or around 2009 she experienced some medical problems, which are the subject of her federal ADA claim.

Plaintiff alleges that on or around March 2013, First Federal merged with SCBT to become the Defendant South State Bank. Plaintiff alleges that prior to the merger (around April 2013), "SCBT/South State offered Plaintiff employment working in the same position that Plaintiff occupied at First Federal", and that Plaintiff accepted this position. Id., at ¶¶ 17, 19. Plaintiff further alleges that as a result of the merger, she was transferred from the accounting department back to the human resources department, still in the position of Payroll Account Assistant III, where she reported to Christie Boland, the Assistant Vice President for Benefits and Compensation. Plaintiff alleges that Boland reported to Susan Bagwell, the Executive Vice President of Human Resources, who in turn reported to Renee Brooks. Id., at ¶¶ 20-21.

Plaintiff alleges that prior to the merger, there was one other female employee at First Federal, Nancy Lewis, who performed the same types of duties as Plaintiff, although Plaintiff alleges she (Plaintiff) was "significantly more experienced". Lewis was also hired by the merged entity.



Plaintiff alleges that "SCBT/South State" also had two employees in its payroll department who performed some of the same duties as did Plaintiff (but on a much lower level), April Edwards and Denise Rickenbacker. Id., at ¶¶ 22-23. Plaintiff alleges that following the merger, she performed her job duties in an above satisfactory fashion and maintained an excellent employment record and that she also never received any formal discipline while employed by First Federal, SCBT, or South State. Id., at ¶¶ 24-26.

Plaintiff alleges that when she was hired by the merged entity, she was advised in "clear terms" that the Defendant "had no intention of terminating Plaintiff's employment". Plaintiff further alleges that when accepting the position, she asked Bagwell if the new position was permanent because she did not want to accept the new position and then be "let go in short order", and that although Bagwell told her that "nothing was permanent", the Defendant "would not have hired or retained Plaintiff if it had an intention to terminate her or lay her off". Id., at ¶¶ 27-28. Plaintiff further alleges that Bagwell (who, along with Boland, told Plaintiff that she (Plaintiff) knew more about payroll taxes than anyone else in the company) stated during human resource department meetings that, when selecting between employees for a reduction in force or layoff, that management was required to base the decision on performance appraisals, skills and knowledge. Plaintiff further alleges that this "policy and procedure is also set forth in writing at SCBT/South State". Id., at ¶¶ 29-30.

Plaintiff alleges that in or around late July 2013, the Defendant began to undertake a payroll conversion, during which Plaintiff was "extremely busy" and which was a "stressful period of time for Plaintiff". Plaintiff further alleges that during this time "it became necessary for [her]



to become firm and assertive with some of the other employees in the department in order to complete the conversion", but that her behavior was "not abusive or inappropriate, but rather firm and assertive - and necessary under the circumstances". Even so, Plaintiff alleges that Bagwell told her that she "needed to stop walking around the office". Then, in or around September 2013, Plaintiff sent an email to employees advising them not to contact the payroll department regarding attendance plans which, for whatever reason, Bagwell found to be inappropriate. Plaintiff alleges that Bagwell called her and told her that while she was a valuable employee, she "needed to be careful about what she said". Plaintiff alleges that Bagwell further told her to retract the email because the Defendant "had an image to portray in light of the merger". Id., at ¶ ¶ 31-33.

Plaintiff alleges that even though she was never disciplined for "any of the above", that on or about October 2, 2013, she was notified by the Defendant that her position had been eliminated and she was terminated. However, Plaintiff alleges that, after her termination, she learned that the "real reason" she was fired was "because of her disabilities and/or because management believed Plaintiff was mentally and emotionally 'unstable'". Plaintiff alleges that, in this regard, management employees, including Senior Human Resources Associate Deborah Nelson and others, published to third parties, including former employee Stephanie Roy and others, verbally and via text messages and telephone calls, that Plaintiff was "crazy", "unstable" and "out of control", and that this was the reason she was fired. Id., at ¶ ¶ 33-37.

In her Second Cause of Action, Plaintiff asserts a claim for slander per se. Plaintiff alleges that the Defendant, by and through the actions of Nelson and others, defamed her by stating to third parties, including Roy and others, that Plaintiff was crazy, out of control and unstable, and

5



that the reason she was terminated was because of her crazy, out of control and unstable conduct. Plaintiff alleges that these statements were false and made without justification, as well as being slanderous per se, in that they alleged that Plaintiff was unfit to carry on in her given trade and profession. Plaintiff alleges that these comments had a defamatory and slanderous meaning, impeached her honesty and integrity thereby exposing her to public hatred, contempt and ridicule, and have caused her to be shunned and avoided and to suffer loss of reputation, embarrassment, humiliation, emotional distress, pain and suffering and loss of enjoyment of life. Plaintiff alleges that the Defendants' actions resulted in special, general and presumed damages, and were also undertaken intentionally, willfully, wantonly, recklessly and maliciously, thereby entitling her to a recovery of punitive damages. Id., at ¶ ¶ 46-53.

In her Third Cause of Action, Plaintiff alleges a claim for breach of contract. Plaintiff alleges that the Defendant "issued verbal and written policies and procedures to its employees, including Plaintiff, regarding how it would conduct a layoff or reduction in force", that said policies and procedures "were stated . . . in strong and mandatory terms and constitute a contract of employment . . . which altered any at-will employment relationship that may have otherwise existed between the parties". Plaintiff further alleges that the Defendant breached its contract with the Plaintiff by terminating her employment even though she had higher performance appraisal scores and superior job skills and knowledge than other similarly situated employees retained by the Defendant, subjecting her to monetary damages. Id., at ¶ ¶ 54-59.

In her Fourth Cause of Action, Plaintiff asserts a claim for breach of contract accompanied by fraudulent act, in which she alleges that the Defendants breached the parties' contract of employment with "fraudulent intent" when it "engaged in fraudulent actions which

6



accompanied the breach, namely defendant slandered Plaintiff; provided false information regarding Plaintiff to third parties; and fired Plaintiff for false reasons". Plaintiff further alleges that this conduct was intentional, willful and wanton, and was undertaken recklessly and maliciously, thereby entitled her to punitive damages. See generally, Amended Complaint.

As noted, the Defendant contends it is entitled to dismissal of these state law causes of action under Rule 12(b), Fed.R.Civ.P. When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Here, after careful review and consideration of the arguments presented pursuant to this standard, the undersigned finds and concludes that the Defendant's motion should be **granted**, in part, and **denied** in part, as set forth hereinbelow.

### Defamation Claim

Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999). While Plaintiff has titled her claim as being one for "slander per se", both forms of defamation (libel and slander) are actually alleged in the Amended Complaint.

In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence

7



of special harm caused by the publication. Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). With respect to the fourth element, if the statement is actionable irrespective of special harm (actual damage that must be pled and proved) it is said to be actionable "per se", while if special damage must be pled to maintain the action, then it is said to be actionable "per quod". Capps v. Watts, 246 S.E.2d 606, 609 (S.C. 1978). Plaintiff has alleged the necessary elements for a defamation claim in her Amended Complaint. Specifically, she has alleged that Nelson (as well as unnamed "others" ) published various negative statements about her to unprivileged third parties which caused her damages. While the allegation concerning publication to "other" persons is conclusory and not, by itself, sufficient to allow this claim to proceed, Plaintiff has specifically alleged in her Amended Complaint that Nelson told a former bank employee (Stephanie Roy), both verbally and via text messages and telephone calls, that the reason Plaintiff was fired was because she was "crazy, unstable and out of control".

In support of dismissal of this claim, the Defendant has cited to a host of court opinions holding that the types of comments alleged here are not generally deemed to be defamatory, as they are merely expressions of opinion, which are not actionable. See Defendant's Reply Brief, pp. 5-6. However, none of those case cites are from South Carolina.[2] Conversely, Plaintiff has cited to Capps, wherein the South Carolina Supreme Court held that the Executive Director of the South Carolina Commission for the Blind calling the Plaintiff, who was legally blind and an official with the National Federation of the Blind, a "paranoid sonofabitch", was sufficiently actionable under the

---

[2]Defendant does cite to two opinions from this United States District Court in a footnote. See Reply Brief, at n. 5. However, as discussed herein in n. 3, infra, those cases do not support dismissal of Plaintiff's defamation claim at this time.



facts of that case to require a jury to determine if that term was used in a libelous sense given the circumstances. While noting that the words "paranoid sonofabitch" were "words of abuse and scurrility and that such words on their face, are not, as a general rule, considered defamatory", the Court further held that it was "not the words alone but the circumstances surrounding their publication which render[ed] them susceptible of a libelous construction", and that where the publication "tends to impeach or injure the Plaintiff in his office, business or occupation", such otherwise general terms can become libelous. Such was the case in Capps, where the term used was "intended to impute personality traits and judgment deficiencies to the plaintiff which [were] incompatible with the proper exercise of the duties of [Plaintiff's] offices with the National Federation for the Blind". Id, at 609-610.³ Cf. Johnson v. Duke Energy Corp., No. 13-2967, 2014 WL 2434630 at * * 2-3 (D.S.C. May 29, 2014) [Denying motion to dismiss defamation claim where Plaintiff's co-workers were told he was terminated due to unprofessional and negligent conduct and poor judgment, which could be actionable as having charged him with being unfit for profession]; Bailey v. Five Star Quality Care, Inc., No. 13-196, 2014 WL 897113 at * 2 (D.S.C. Mar. 6, 2014).

The Plaintiff's allegations here fall into this same category. While the terms "crazy, unstable and out of control" may not, on their face, be considered defamatory as a general rule, as was the case with the term "paranoid sonofabitch" in Capps, these terms are alleged here to have

---

³The two DSC cases cited by the Defendant in its brief also stand for the proposition that comments which might normally be considered statements of "opinion" must be viewed in the context in which they were made in determining whether a defamatory meaning may be present. Kelley-Moser Consulting, LLC v. Daniels, No. 10-2057, 2012 WL 554643, at * 17-18 (D.S.C. Feb. 21, 2012); Sunshine Sportswear & Elecs., Inc. v. WSDC Television, Inc., 738 F.Supp 1499, 1506 (D.S.C. 1989) [Noting that court must consider the speaker's choice of words, the context of the statement within the entire publication, and the broader social context into which the statement fits in determining whether it has a defamatory meaning].



been used in the context of being the reason that Plaintiff had to be fired from her job. Plaintiff specifically alleges that Nelson told Roy that "Plaintiff was fired because she is crazy, unstable and out of control", and that "Plaintiff was terminated because she was crazy and unstable and out of control". Amended Complaint, ¶ ¶ 36, 47. As such, as alleged the terms used "were intended to impute personality traits and judgement deficiencies" which were incompatible with Plaintiff's ability to perform her profession. Capps, 246 S.E.2d at 609-610. Plaintiff further alleges that these statements were "slanderous per se" in that they "allege Plaintiff is unfit to carry on in her given trade and profession". Id, at ¶¶ 49, 51. In any event, it is not necessary for a finding to be made as the type of damage potentially obtainable, at least at this point in the proceedings, as under Capps Plaintiff is not required to plead and prove special damages, since "imputations of conduct or characteristics incompatible with a person's office, trade or profession" can be "libelous and actionable without the pleading of special damage[s]". Capps, 246 S.E. 2d at 611-612.

In sum, while it may be that the Defendant will be able to prove at summary judgment or at trial that the facts do not support Plaintiff's claim that she was subjected to any defamatory comments under a Murray analysis, the only question for the Court at this point in the proceedings is whether Plaintiff has set forth sufficient allegations in her Amended Complaint, accepting those allegations as true and drawing all reasonable factual inferences therefrom in her favor, to state a "plausible" claim for defamation. Iqbal, 129 S.Ct. at 1949; see also Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

10



and that a recovery is very remote and unlikely"], citing Twombly, (internal quotation marks and citations omitted). Plaintiff has set forth sufficient factual allegations to allow this claim to proceed at this time, and the Defendant is therefore not entitled to a Rule 12 dismissal of this claim. Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 146 (S.D.N.Y. 2004)[Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].

### Breach of Contract Claim

With respect to her claim for breach of contract, Defendant asserts that this claim is subject to dismissal because Plaintiff has failed to set forth factual allegations sufficient to give rise to a plausible claim that she had an employment contract with the Defendant. The undersigned is constrained to agree.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). Further, with respect to employment, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .". Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to



establish the existence of an employment contract beyond the at-will relationship . . . ."], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

Plaintiff alleges in her Amended Complaint that the Defendant "issued verbal and written policies and procedures to its employees, including Plaintiff, regarding how it would conduct a layoff or reduction in force", and that said policies and procedures "were stated . . . in strong and mandatory terms and constitute a contract of employment . . . which altered any at-will employment relationship that may have otherwise existed between the parties". In this regard, Plaintiff alleges that the Defendant's "Policies and Procedures required defendant to base [its] decision on the performance appraisal scores and the skill and knowledge of the employees at issue and to retain the employee(s) with the higher performance appraisal scores and superior skills and knowledge". Amended Complaint, ¶¶ 55-57. However, these allegations set forth mere conclusions, while failing to actually cite to any such verbal or written "mandatory" language. As such, they do not contain sufficient "facts" to establish the existence of an employment contract in an at will State like South Carolina. Perrine, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship"]; see also Frey v. City of Herculaneum, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"].

Plaintiff cannot simply conclusorily allege that her employer had layoff and reduction policies in effect that were sufficiently mandatory in their terms to constitute a "contract" for



employment, provide no specifics to support this conclusory statement, and expect to survive a motion to dismiss.  Rather, in order to survive the Defendant's motion to dismiss, the allegations of the Complaint must set forth sufficient *facts* to state a plausible claim that a contract of employment did exist.  Francis, et al, v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) [To meet the plausibility standard, the Plaintiff must "articulate facts , when accepted as true," that state a plausibility of entitlement to relief]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; see also Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].  Plaintiff has failed to include any such allegations in her Complaint.

          Specifically with respect to Plaintiff's allegation that the Defendant's layoff and reduction in force rules (which even Plaintiff herself describes as a "policy and procedure") were set forth in mandatory, contractual terms "in writing", she fails to identify these alleged "writings" anywhere in her allegations, or quote from any of these alleged writings to show or create at least an inference of the existence of an employment "contract" beyond the at-will relationship.  See Amended Complaint, ¶¶ 30, 55. Cf. Battle v. Nikanth, LLC, 2013 WL 4874976, at * 3 (D.S.C. Aug. 20, 2013) [Dismissal of breach of contract claim warranted where Plaintiff "simply and conclusorily allege[d]" that a Defendant's employee handbook had "mandatory language creating a contractual agreement"]; Gray v. American Homepatient, Inc., 2014 WL 7965987, at * 8 (D.S.C. Oct. 24, 2014)



2:15-cv-00708-RMG-BM     Date Filed 09/15/15    Entry Number 21    Page 14 of 19

[Finding dismissal of breach of contract claim warranted where former employee failed to quote or attach specific language from any employee handbook or written policy], adopted by 2015 WL 892780 (D.S.C. Mar. 3, 2015).  By contrast, the Defendant has actually attached to its motion to dismiss copies of Plaintiff's employment application as well as a copy of the Defendant's Compensation and Policy Manual Notice and Notice Concerning Employment Status, wherein Plaintiff specifically acknowledges that the contents of her employee manual are not a contract of employment between her and the Defendant; that she is an at-will employee which means that both she and the Defendant have the right to terminate her employment at any time, for any reason, or no reason at all; that the contents of the employee manual are only guidelines of the Defendant's policies and procedures and do not create a contract or alter her at-will employment in any way; and that no one other than the President of the Defendant has the authority to enter into employment contracts, which must be writing, and that no one else, either in writing or verbally, can create an employment contract with the Plaintiff that would bind the Defendant or otherwise alter her at-will employment. See Defendant's Motion to Dismiss, attached Exhibits 1-3.[4]  Plaintiff has not disputed

---

[4]In addition to factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any document that is "integral to and explicitly relied on in the complaint." Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004);  White v. VNA Homecare, Inc., No. 11-971, 2012 WL 1435432 at * 1 n. 1 (S.D.Ill. Apr. 25, 2012)[Since the handbook is a document referenced in plaintiff's complaint and is central to her claim, the court can consider it on Defendant's 12(b)(6) motion to dismiss]; McClurkin v. Champion Laboratories, Inc., No. 11-2401, 2011 WL 5402970 at * 2 (D.S.C. Nov. 8, 2011)[Attachment by Defendant of employee handbook did not convert motion to dismiss to a summary judgment motion where Plaintiff referred to employee handbook in her complaint]; cf. Smith v. McAlister-Smith Funeral Home, Inc., No. 11-3281, 2012 WL 4378185 at * 3 (D.S.C. Sept. 25, 2012)[Since Plaintiff neither attached or referenced the employee handbook in his operative complaint, the court may not consider the employee handbook that Plaintiff attached to memorandum in opposition to motion to dismiss, his objection to the Report
(continued...)

14



the validity of these exhibits in her response, arguing instead that it is "plausible" that these documents (which she herself signed) may be invalid and not even apply to her since they were issued by her previous employer (First Federal), before the merger.

Plaintiff also argues that with respect to the allegations of her Complaint, she should not be required to plead "the exact and specific language from the handbook or policy at issue", stating that she should be allowed to conduct discovery on the issue, and that any event she did allege the specific terms of the policy as it was verbally stated to her. Plaintiff's Brief, p. 15. This "verbal statement" argument is referring to the only specific factual allegations contained in the Amended Complaint relating to the alleged policies and procedures Plaintiff alleges constituted a contract, which are found in ¶ 30. In that paragraph, Plaintiff alleges that "Bagwell had stated in Human Resource Department meetings that, when selecting between employees for a reduction in force or a layoff, that management was required to base the decision on performance appraisals, skills and knowledge and that, obviously, the employee with the lesser appraisal scores, skills and knowledge would be selected for termination". However, while at-will employment can be altered by an oral promise, even assuming Plaintiff's allegations as to what Bagwell stated in these Human Resource meetings to be true,[5] merely orally advising employees of what the Defendant's policy was with respect layoffs and how any layoffs or reductions in force would be accomplished does not constitute a "contract" for employment. "[T]o be binding an oral offer must be definite in its terms", and

---

[4](...continued)
and Recommendation, and his improperly filed amended complaint].

[5]And notwithstanding the specific documentary evidence that Plaintiff had already acknowledged that only the Defendant's President could create a contract of employment, which had to be in writing.

15



assurances as to how certain employment decision will be made are not tantamount to a binding contract. Walton v. Lockheed Martin Aircraft Center, No. 09-462, 2010 WL 3951524, at * 9 (D.S.C. Aug. 30, 2010), adopted by, 2010 WL 3951512 (D.S.C. Oct. 7, 2010), aff'd. 407 App. 764 (4th Cir. Jan. 18, 2011); Chauncey v. Life Cycle Engineering, Inc., No. 12-968, 2013 WL 5468298, at * 27 (D.S.C. July 29, 2013), adopted in part and rejected in part on other grounds, 2013 WL 548237 (D.S.C. Sept. 30, 2013); cf. Davis v. Orangeburg-Calhoun Law Enforcement Commission, 542 S.E.2d 755, 760 (S.C.Ct.App. 2001) [Finding that a supervisor's promise that an employee would "only be terminated for cause" was insufficient to constitute a binding contract]; Prescott v. Farmers Tel. Co-Op, Inc., 516 S.E.2d 923, 926 (S.C. 1999) [Holding that supervisor's promise that "as long as you do your job, keep your nose clean . . . you would have a job" was insufficient to constitute a binding contract].

In any event, the undersigned is also constrained to note that Plaintiff herself states in the allegations of her Amended Complaint that when she asked this same individual, Bagwell, whether her position was permanent or whether she could be terminated or laid off, that Bagwell specifically told her that "nothing was permanent". Amended Complaint, ¶ 28. Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *4 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."].

Plaintiff cannot simply allege, as she does in her Complaint, that "said policies and

16



procedures were stated by defendant in strong and mandatory terms and constitute a contract of employment between the parties which altered any at-will employment relationship that may have otherwise existed"; see Amended Complaint, ¶ 58; provide no supporting factual allegations to support this conclusory claim, and expect to survive a motion to dismiss.  Amason, 2011 WL 1100169, at * 6 [finding that "plaintiff's Complaint merely sets forth labels and conclusions, and a formulaic recitation of the elements of a cause of action, which the Supreme Court has made clear will no longer suffice".]; see also Twombly, 550 U.S. at 555 [To survive a motion to dismiss, Plaintiff's grounds for entitlement to relief must contain "more than labels and conclusions"]; Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].  Plaintiff's argument in her brief that she is not required to plead "exact and specific language" to support her claim is simply not the law.  House, 824 F.Supp. at 485 [Conclusory allegations insufficient to maintain claim]; Twombly, 550 U.S. at 555 ["Factual allegations must be enough to raise a right to relief above the speculative level"]; Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenent that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].

Therefore, the Defendant is entitled to dismissal of Plaintiff's breach of contract cause of action.  Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

**Breach of Contract Accompanied by Fraudulent Act**

Finally, with respect to Plaintiff's claim for breach of contract accompanied by



fraudulent act, the Defendant correctly notes that claims involving breach of contract accompanied by fraudulent act require, in the first instance, the existence of a contract.  See Shelton v. Oscar Mayer Foods Corp., 459 S.E.2d 851, 857 (S.C.Ct.App. 1995), aff'd, 481 S.E.2d 706 (1997); Maco v. Lewis, 697 S.E. 2d 684, 688 (S.C.Ct.App. 2010); Lister v. Nationwide of Delaware, N.A., 494 S.E.2d 449, 454 (S.C.Ct.App. 1997).  Therefore, as Plaintiff has failed to set forth sufficient factual allegations to show that she had an employment contract; see Discussion, supra; this claim necessarily fails and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's Second Cause of Action for slander (defamation) be **denied** for the reasons stated. Defendant's motion to miss Plaintiff's Third Cause of Action for breach of contract and Fourth Cause of Action for breach of contract accompanied by fraudulent act should be **granted**, and those two causes of action should be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 15, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

