IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Prissy Todd, | ) |
| | ) Civil Action No.: 2:15-cv-0708-RMG |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| South State Bank, f/k/a South Carolina | ) |
| Bank and Trust, f/k/a/ First Federal Bank | ) |
| and South State Corporation, f/k/a | ) |
| SCBT Financial Corporation, f/k/a | ) |
| First Financial Holdings, Inc., | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on the Report and Recommendation (R & R) of the Magistrate Judge. (Dkt. No. 21). For the reasons below, this Court adopts the R & R.

### I. Background

In 2001, Defendant First Federal Bank hired Plaintiff Prissy Todd to work as a teller. In 2004 Todd moved to the human resources department, and in 2005, she began working in the accounting department as a Payroll Account Assistant III. In 2009, Plaintiff suffered a stroke which she attributed, at least in part, to the stress of the job.

Plaintiff was subsequently diagnosed with depression and anxiety shortly thereafter and was placed on medication. She took Family and Medical Leave Act leave three times in 2009 and 2010.

In 2013, First Federal Bank merged with South Carolina Bank and Trust to form South State Bank. When merger plans were announced, Plaintiff's anxiety and depression became aggravated and she was again prescribed medication for her impairments. After the merger,

Plaintiff worked in the same job position, albeit in the human resources department rather than the accounting department.

Plaintiff alleges that her performance evaluations were "always above average," and that she never received any formal discipline during her employment. (Dkt. No. 23 at 5). Plaintiff also states that although there were three other individuals who performed some of the same duties that she did, they did so on "a much lower level." Id. She also alleges that South State advised her that it "had no intention in terminating [her] employment." Id. When Plaintiff asked if her position was permanent, she was informed that "nothing was permanent," but there were no plans to terminate her. Id.

In July 2013, South State began the process of converting First Federal employees to South State employees. This created a substantial amount of work for Plaintiff and the department in which she worked. During this time period, she alleges that she walked around the office and assisted other employees in a "firm and assertive" manner. Her supervisor told her to stop walking around the office. Id. at 6.

In September 2013, Plaintiff sent an email that her supervisor found to be inappropriate. The supervisor allegedly told her that "the company needed [Plaintiff[; that [Plaintiff] knew more about payroll than anyone else in the company; but that [Plaintiff needed to be careful about what she said." (Dkt. No. 23 at 6). The supervisor then instructed Plaintiff to retract the email.

On October 2, 2013, South State informed Plaintiff that her position had been eliminated and that she was terminated. The three employees who performed similar work to her were retained. Plaintiff later learned that South State employees including Deborah Nelson, the Senior Human Resources Associate, had told other employees—verbally and via text messages—that

Plaintiff was fired because she was "crazy, unstable and out of control." (Dkt. No. 23 at 7). And Plaintiff later learned that South State was making efforts to hire a replacement for Plaintiff.

Plaintiff filed this action asserting claims under the Americans with Disabilities Act ("ADA"), as well as state law claims for slander *per se*, breach of contract, and breach of contract accompanied by a fraudulent act. (Dkt. No. 1). Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's state law causes of action on March 19, 2015. (Dkt. No. 6). And the Magistrate Judge issued an R & R recommending that this court grant Defendants motion to dismiss with respect to the breach of contract and breach of contract accompanied by a fraudulent act claims, and deny Defendant's motion with respect to the slander *per se* cause of action.

## II. Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R & R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

## III. Discussion

Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's state law claims. Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of

3

the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

This Court now addresses each of Plaintiff's state law claims in turn.

### A. Defamation Claim

"The tort of defamation allows a plaintiff to recover for injury to her reputation as the result of the defendant's communication to others of a false message about the plaintiff." Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). Slander is spoken defamation, and libel is written defamation. Id. Although Plaintiff styles her first cause of

4

action as "slander *per se*," she pleads facts alleging both slander and libel in her amended complaint.

To prevail in a defamation action, a plaintiff must establish that "there was (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm to the plaintiff caused by the publication." Parrish v. Allison, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007).

The term of defamation *per se* has led to some confusion in South Carolina because it can refer to two different things. See Holtzscheiter, 506 S.E.2d at 502 n.5. A communication is defamatory *per se* if the defamatory meaning is obvious on the face of the statement. Id. at 501. If the plaintiff must introduce extrinsic facts to prove a defamatory meaning, it is defamation *per quod*. Id. In addition to being defamatory *per se* or *per quod*, the statement will also be actionable *per se* or not actionable *per se*. Id. at 502. "If the defamation is actionable *per se*, the law presumes the defendant acted with common law malice and that the plaintiff suffered general damages. If the defamation is not actionable *per se*, then the plaintiff must plead and prove common law actual malice and special damages." Parrish, 656 S.E.2d at 389.

Defendant's objections argue that the complained of comments "were not defamatory but instead were legally protected opinions and/or figurative, exaggerated hyperbole." (Dkt. No. 27 at 5). To support this assertion, Defendant cites several authorities from outside of South Carolina (while noting that the South Carolina appellate courts have never ruled that such words were defamatory). These authorities are unpersuasive, and the Court instead looks to a case from the Supreme Court of South Carolina for guidance.

5

In Capps v. Watts, the Supreme Court of South Carolina held that the words "paranoid sonofabitch" were words of abuse and scurrility and that such words, on their face, are not, as a general rule, considered defamatory." 246 S.E.2d 606, 609 (S.C. 1978). It went on to hold, however, that they could be defamatory *per quod* because they were "susceptible of a libelous construction." Id. In other words, a jury could infer that there was defamatory meaning behind those words.

This Court agrees with the Magistrate Judge's analysis and reasoning regarding Plaintiff's defamation claim. This Court finds that under South Carolina law, calling someone "crazy," "unstable," or "out of control" is not defamatory *per se*. But pursuant to Capps, those terms could be defamatory *per quod*. Because Plaintiff plausibly pleads the remaining three elements of a defamation cause of action, this Court denies Defendant's Rule 12 motion to dismiss.

### *B. Breach of Contract*

The Magistrate Judge recommended dismissing Plaintiff's breach of contract claim because she failed to set forth factual allegations sufficient to give rise to a plausible claim that she had an employment contract with the Defendant. This Court agrees with the Magistrate Judges' thoughtful and well-reasoned analysis and dismisses this claim. The court also notes that Plaintiff's allegation that Defendant was "making efforts to hire another person into plaintiff's position" undercuts the importance of her allegation that Defendant failed to follow its policies regarding layoffs and reductions in force. (Dkt. No. 23 at 7). Even if Defendant's policies were binding in layoff and reduction-in-force situations, Plaintiff's allegation that Defendant sought to replace her suggests that neither a layoff nor a reduction in force happened here. As allege, the facts suggest that Defendant simply terminated Plaintiff.

*C. Breach of Contract Accompanied by Fraudulent Act*

The Magistrate Judge applied sound law and reasoning in concluding that a claim involving breach of contract accompanied by fraudulent act should be dismissed in the absence of a contract. The Court dismisses this claim.

## IV. Conclusion

For the aforementioned reasons, this court **ADOPTS** the Magistrate Judge's R & R (with modifications) as the order of this court, **GRANTS** Defendants' motion to dismiss in part, and **DENIES** Defendant's motion to dismiss in part (Dkt. No. . The Court also **DENIES** the parties' consent motion for an extension of time to file objections to the R & R (Dkt. No. 24) as moot.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

October 22, 2015
Charleston, South Carolina

7